**SO ORDERED: March 29, 2013.**



_____
James M. Carr
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| MICHAEL JAY FRISBY ) | |
| and ) | |
| GRACELYN INEZ FRISBY, ) | Case No. 12-01989-JMC-7 |
| ) | |
| Debtors ) | |
| ) | |
| _____ ) | |
| ) | |
| EASY GUY AUTO SALES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Adv. Proc. No. 12-50173 |
| ) | |
| MICHAEL JAY FRISBY ) | |
| and ) | |
| GRACELYN INEZ FRISBY, ) | |
| ) | |
| Defendants. ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The plaintiff, Easy Guy Auto Sales, Inc. ("Easy Guy"), filed its Complaint to Determine

Dischargeability of Debt on May 25, 2012 ("Complaint"). The Easy Guy alleged in the Complaint that the defendants, Michael Jay Frisby and Gracelyn Inez Frisby ("the Frisbys"), owe a debt to Easy Guy that is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). A trial was held on February 13, 2013. The following are findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.

**Findings of Fact**

1. Sometime around January of 2010, Michael Frisby ("Frisby") purchased a vehicle from an unknown third party. The vehicle was a Chevrolet Silverado (the "Silverado"). Frisby did not receive a certificate of title. He received a signed power of attorney from the seller that enabled Frisby to obtain a certificate of title to the Silverado from the Bureau of Motor Vehicles ("BMV") at a later date.

2. The Frisbys used the Silverado for the next seven to nine months.

3. In August of 2010, Frisby approached Walter Shearer ("Shearer"), the general manager of Easy Guy, and asked about a possible trade-in of his Silverado in exchange for the purchase of a vehicle (the "Purchased Vehicle") from Easy Guy. Shearer believed that the Silverado was a 2003 model Silverado, VIN 2GCEK19N331412426. On behalf of Easy Guy, Shearer agreed to the trade-in of the Silverado and sale of the Purchased Vehicle to Frisby (the "Transaction").

4. Shearer and Frisby had known each other for 4-6 years and had a good working relationship. Frisby had worked for Easy Guy however that employment had ended for reasons unrelated to the controversy before the Court.

5. As part of the Transaction, Shearer arranged an auction sale of the Silverado at Manheim Auctions in Indianapolis and sold the Silverado for $11,400.00. Before the auction, Frisby used the power of attorney to obtain a new certificate of title from the BMV to enable Shearer to sell the Silverado at auction. Before the auction, Shearer conducted a VIN check to review the transactional history of the Silverado; Shearer discovered no irregularities.

6. To evidence the Transaction, Frisby and Easy Guy entered into a sales contract. Frisby agreed to purchase a 2003 Chrysler Town and Country van, VIN 2C4GP74L93R125130, as the Purchased Vehicle for approximately $4,250.00.

7. As a part of the same Transaction, Frisby traded in the Silverado to Easy Guy. He received the Purchased Vehicle and a cash payment of approximately $6,165.00.

8. Sometime in early September of 2010, a remote purchaser of the Silverado discovered that the vehicle's VIN had been altered and contacted the Plainfield Police Department in Plainfield, Indiana.

9. The Plainfield Police Department determined that the Silverado was actually a 2006 model vehicle, VIN 2GCEC19N061172267, that had been reported as stolen in December of 2009.

10. In mid-September of 2010, Manheim demanded that Easy Guy return the $11,400.00 payment that Easy Guy had received at the auction. Easy Guy complied with the request and returned the proceeds of the auction.

11. At some time after it was discovered that the Silverado was stolen, Frisby and Shearer either met in person or had a conversation over the phone. In that

conversation, Shearer demanded the return of the Purchased Vehicle and the return of the $6,165.00 cash payment. Frisby refused to return the Purchased Vehicle or the cash payment.

12. The Federal Bureau of Investigation ("FBI") contacted Frisby regarding the stolen Silverado. However, the FBI took no further action against Frisby. No criminal charges have been filed against Frisby by either the FBI or the Plainfield Police Department and there has been no additional follow up by any law enforcement agency.

13. On January 7, 2011, Easy Guy filed a complaint against the Frisbys in the Marion County Superior Court to recover money damages ("the state court action"). The complaint was filed under cause number 49D06-1101-CT-000858.

14. On December 13, 2011, Easy Guy's Motion for Summary Judgment in the state court action was granted and Easy Guy was awarded a judgment against the Frisbys in the amount of $8,197.26 plus interest in the amount of 8% per annum (the "Judgment Debt").

15. On February 29, 2012, the Frisbys commenced this bankruptcy case by filing their petition for relief under Chapter 7 of the United States Bankruptcy Code.

16. On May 25, 2012, Easy Guy initiated this adversary proceeding against the Frisbys. The Complaint asserts that the Judgment Debt to Easy Guy is nondischargeable under 11 U.S.C. 523(a)(2)(A) and 11 U.S.C. 523(a)(6).

17. On June 26, 2012, the Frisbys received their discharge.

18. At all times the Frisbys were residents of the state of Indiana and Easy Guy was an Indiana corporation.

### Conclusions of Law

1. This court has jurisdiction in this matter pursuant to 28 U.S.C. 1334 and 157.

2. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(I).

3. Venue is proper in this matter pursuant to 28 U.S.C. 1408 and 1409.

4. This action arises under 11 U.S.C. 523(a)(2)(A), 11 U.S.C. 523(a)(6) and Fed.R.Bankr.P. 7001(1) and (6).

5. Exceptions to discharge under 11 U.S.C. 523 are "to be construed strictly against the creditor and liberally in favor of a debtor." *In re Scarlata*, 979 F.2d 521, 524 (7th Cir. 1992). *See also Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir. 1994); *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985) ("To further the policy of providing the debtor a fresh start in bankruptcy, exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor"). The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *In re Martin*, 698 F.2d 883, 887 (7th Cir. 1983). The burden of proof required for establishing an exception to discharge is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991).

### 11 U.S.C. 523(a)(2)(A)

6. Under 11 U.S.C. 523(a)(2)(A), an individual debtor shall not be allowed a discharge for any debt "for money, property, services, or an extension, renewal, or

refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud..."

7. Section 523(a)(2)(A) lists three separate grounds for nondischargeability: actual fraud, false pretenses and false representation. Although many courts have applied the same test to all three grounds, the Seventh Circuit has distinguished between the three grounds and has formulated two different tests, one for both "false pretenses" and "false representation" and another for "actual fraud." *In re Scarpello*, 272 B.R. 691, 699-700 (Bankr. N. D. Ill. 2002); citing *McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000).

8. To prevail on a nondischargeability claim under the "false pretenses" or "false representation" theories, a creditor must prove all of the following elements: (1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth, and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied. *Ojeda v. Goldberg*, 599 F.3d 712, 716-717 (7th Cir. 2010), *Scarpello*, 272 B.R. at 700.

9. "False pretenses" include "implied misrepresentations or conduct intended to create and foster a false impression." *Mem'l Hospital v. Sarama* (*In re Sarama*), 192 B.R. 922, 927 (Bankr. N. D. Ill. 1996). "False pretenses" do not necessarily require overt misrepresentations. "Instead, omissions or a failure to disclose on the part of a debtor can constitute misrepresentations where the circumstances are such that omissions or failure to disclose create a false impression which is known by the debtor." *Id.* at 928.

10. A "false representation" is an express misrepresentation that can be shown by the debtor's written statement, spoken statement or conduct. *Scarpello,* at 700. "A debtor's failure to disclose pertinent information may be a false representation where the circumstances imply a specific set of facts and disclosure is necessary to correct what would otherwise be a false impression." *In re Hanson*, 432 B.R. 758, 772 (Bankr. N. D. Ill. 2010), citing, *Trizna & Lepri v. Malcolm (In re Malcolm),* 145 B.R. 259, 263 (Bankr. N. D. Ill. 1992).

11. "Actual fraud" is broader than misrepresentation in that neither a debtor's misrepresentation nor a creditor's reliance is necessary to prove nondischargeability under the "actual fraud" application of section 523(a)(2). "Actual fraud" is defined as "any deceit, artifice, trick or design involving direct and active operation of the mind used to circumvent and cheat another" which includes "all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." *McClellan*, at 893. In such cases, a creditor must prove (1) a fraud occurred; (2) the debtor intended to defraud the creditor and (3) the fraud created the debt. *Hanson*, 432 B.R. at 772.

12. A creditor must also prove the debtor acted with the intent to deceive under all approaches to §523(a)(2)(A). A debtor's intent to deceive is measured by his or her subjective intention at the time the representation was made. *Scarpello*, 272 B.R. at 700. Additionally, "[b]ecause direct proof of fraudulent intent is often unavailable, fraudulent intent may be inferred from the surrounding circumstances." *Hanson*, 432 B.R. at 773.

13. Finally, a creditor seeking nondischargeability under section 523(a)(2)(A) under either the "false pretenses" or "false misrepresentation" theories must show causation between the debtor's acts and the creditor's resulting injury by proving that the creditor "justifiably relied" on the debtor's false pretenses or false representation. *Fields v Mans*, 516 U.S. 59, 74-75, (1995). "Justifiable" reliance is an intermediate level of reliance which is less stringent than "reasonable" reliance but more stringent than "reliance in fact." *Id.* at 71. "Justifiable" reliance requires only that the creditor did not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation" and imposes no duty on the creditor to investigate unless the falsity of the representation is readily apparent. *Id*. at 70-72. "Justifiable" reliance is not measured from the objective person standard, but rather from the experiences and characteristics of the particular creditor. *Id*. at 71.

14. There was no evidence at trial that Gracelyn Frisby participated in the purchase of the Silverado or in the trade-in transfer of the Silverado to Easy Guy. There was no evidence that Gracelyn Frisby made any kind of false representation or omission to Easy Guy and there was no evidence that she intended to deceive Easy Guy.

15. There was insufficient evidence at trial to prove that Frisby made a material false representation or omission to Easy Guy regarding the Silverado.

16. There was no evidence that Frisby used false pretenses or actual fraud to deceive Easy Guy.

17. There was no evidence at trial to show that Frisby had any intent to deceive Easy Guy and there was insufficient evidence to allow the Court to infer that Frisby intended to deceive Easy Guy. Frisby's offer to trade the Silverado to Easy Guy could have been based upon his ignorance regarding the prior theft of the Silverado. In fact, given that the Frisbys used the Silverado extensively before the Transaction, Frisby's ignorance regarding the theft is more likely than that he was aware that the Silverado had been stolen.

18. Because there was insufficient evidence at trial to show that Frisby made a false representation or omission to Easy Guy, there was also insufficient evidence of false statement or omission upon which the Easy Guy could justifiably rely.

19. The plaintiff has not met its burden under section 523(a)(2)(A).

### 11 U.S.C. 523(a)(6)

20. Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." To state a claim under §523(a)(6)…a creditor must allege (1) a tortious injury [caused by the debtor], (2) committed willfully, and (3) committed maliciously." *In re Odeh*, 431 B.R. 807, 817 (Bankr.N.D.Ill.2010).

21. Willfulness requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). There must be proof that the defendants intended to cause the injury and not simply "the act itself." *Id*. at 61-62. The *Geiger* Court noted that to give the "willful and malicious" standard a broader interpretation would be to except from

discharge injuries derived from "[e]very traffic accident stemming from an initial intentional act" and every "knowing breach of contract." *Id*. at 62. The Court stated that such a broad interpretation would be in conflict with the policy that "exceptions to discharge 'should be confined to those plainly expressed.'" *Id*.

22. Maliciousness as used in section 523(a)(6) has been defined as a "conscious disregard of one's duties without just cause or excuse; it does not require ill-will or the specific intent to do harm." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994).

23. In arguments at trial and in Easy Guy's brief, Easy Guy contends that Frisby's failure to return the Purchased Vehicle and the cash payment was a tortious act.

24. There was no evidence at trial that Gracelyn Frisby was involved in the discussions between Frisby and Shearer after it was discovered that the Silverado had been stolen. There was no evidence that Gracelyn Frisby committed any tortious act.

25. There was no dispute at trial that Easy Guy has been injured by Frisby's failure to return the Purchased Vehicle and the cash payment.

26. There was, however, insufficient evidence that Frisby injured Easy Guy willfully and maliciously. There was no evidence that Frisby intended to harm Easy Guy by refusing to return the Purchased Vehicle and the cash payment. No evidence was presented that Frisby concealed the Purchased Vehicle or used the cash payment improperly but there was testimony that Frisby had already transferred the Purchased Vehicle to a third party and had spent a significant amount of the

cash payment on repairs to his home's roof. Frisby's failure to return the Purchased Vehicle and the cash payment was not a conscious disregard of his duties to Easy Guy without just cause or excuse.

27. Additionally, Frisby's failure to return the Purchased Vehicle and the cash payment did not constitute implied or constructive malice. The Court notes that if a refusal to satisfy a creditor's demand for payment or return of goods constituted implied or constructive malice, then the element of maliciousness would be met in virtually every bankruptcy case. This is surely not the intent of the law regarding exceptions to discharge.

28. The plaintiff has not met its burden under section 523(a)(6).

Accordingly, the Court concludes that the Judgment Debt is DISCHARGEABLE. The Court will enter judgment in favor of the Defendants.

# # #